# 12-1245-pr

## United States Court of Appeals

*for the*

## Second Circuit

JOHN SANTIAGO,

*Plaintiff-Appellant,*

— v. —

D. LACLAIR,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

LAW OFFICE OF SALLY WASSERMAN
*Attorney for Plaintiff-Appellant*
352 Seventh Avenue, 11th Floor
New York, New York 10001
(212) 631-7504

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................. ii

QUESTION PRESENTED............................................................ iv

JURISDICTION STATEMENT...................................................... v

PRELIMINARY STATEMENT...................................................... vi

STATEMENT OF FACTS............................................................ 1

    Introduction........................................................... 1

    The Initial Proceedings...................................... 2

    The Plea.............................................................. 6

    The Sentence...................................................... 7

    The State Collateral Attack Upon the Conviction............ 8

    The Instant Petition............................................. 12

    The Grant of a Certificate of Appealability...................... 13


ARGUMENT-
COUNSEL'S INEFFECTIVENESS RESULTED IN THE ENTRY OF AN UNCONSTITUTIONAL CONVICTION AND NEW YORK STATE'S CONCLUSION TO THE CONTRARY WAS AN UNREASONABLE APPLICATION OF SUPREME COURT LAW.................................................... 15

CONCLUSION-
FOR ALL OF THE FOREGOING REASONS, THIS COURT IS URGED TO GRANT THE PETITIONER HABEAS CORPUS RELIEF............................. 34

Certificate of Compliance..................................................................... 34

# TABLE OF AUTHORITIES

Case                                             Page

*Aeid v. United States*, 296 F. 3d 58 (2d Cir. 2002).............. 29

*Bobby v. Van Hook*, 558 U.S. 4 (2009)................................ 24

*Boria v. Keane*, 99 F.3d 492 (2d Cir. 1996)........................ 27

*Brady v. United States*, 397 U.S. 742 (1970)....................... 19, 29

*Church v. Corcoran,*
     2010 U.S. Dist. LEXIS 7424 (NDNY 2006)............. *52*

*Dorsey v. Kelly*, 112 F.3d 50 (2d Cir. 1997)........................ 27

*Frederick v. Warden*, 308 F.3d 192 (2d Cir. 2002)............ 26

*Galarza v. Keane,* 252 F. 3d 630 (2d Cir. 2001)................ 26

*Harrington v. Richter*, __ U.S.__, 131 S. Ct. 770 (2011)..... 33

*Hill v. Lockhart*, 474 U.S. 52, 60 (1985)............................ 23*, 32*

*Jones v. Stinson*, 229 F.3d 112 (2d Cir. 2000).................... 27

*Kimmelman v. Morrison*, 477 U.S. 365 (1986)................. 23

*Lockyer v. Andrade*, 538 U.S. 63 (2003)............................ 28

*McMann v. Richardson,* 397 U.S. 759 (1970).................... 23

*Matter of Taylor v. Fischer,*
     67 A.D. 3d 1191 (3d Dept. 2009)........................... 16

*Melendez v. Bennett, 291 A.D. 2d 590 (3d Dept. 2002)....* 16

*Missouri v. Frye,* __ U.S. __, 132 S. Ct. 1399 (2012)......... 20, 25, 30

*Montejo v. Louisiana*, 556 U.S. 778 (2009)....................... 22

*North Carolina v. Alford*, 400 U.S. (1970)......................... 19, 22, 32

*Padilla v. Kentucky*, __ S. Ct. __, 130 S. Ct. 1473 (2010).. 30

*Parisi v. United States*, 529 F.3d 134 (2d Cir. 2008)......... 26

*People v Brothers*, 95 A.D.3d 1227 (2d Dept. 2012).......... 18

*People v. Ciccarelli*, 32 A.D.3d 1175 (3d Dept. 2006)....... 20

*People ex rel. Gill v. Greene*, 12 N.Y.3d 1 (2009).............. 15, 31

*People v Martin*, 278 A.D.2d 743(2000)............................ 20

*People v. Morabillo,* 56 A.D. 3d 694 (2d Dept. 2008)......... 31

*People v. Sandoval*, 34 N.Y. 2d 371 (1974)....................... 18

*People v. Sellers*, 222 A.D. 2d 941 (3d Dept. 1995)........... 20

*People v. Sheils*, 288 A.D.2d 504 (2d Dept. 2001)............. 20

*Price v. Vincent*, 538 U.S. 634 (2003)................................ 28

*Sellan v. Kuhlman*, 261 F. 3d 303 (2d Cir. 2001)............... 29

*Shelton v. United States*, 246 F.2d 571 (5th Cir. 1957).......        30

*Strickland v. Washington*, 466 U.S. 668 (1984)..................        22

*Tollett v. Henderson,* 411 U.S. 258 (1973).........................        23, 32

*United States  v. Antonetti*,
      362 Fed. Appx. 200 (2d Cir. 2010)...........................        32

*United States v. Benitez*, 542 U.S. 74 (2004).......................        25

*United States v. U.S. Currency*, 895 F.2d 908
      (2d Cir. 1990)...........................................................        31, 32

*United States v. Day*, 969 F.2d 39 (3d Cir. 1992)..............        27

*United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998).......        27

*United States v. Torres*, 129 F.3d 710 (2d Cir. 1997)........        26

*Williams v. Taylor*, 529 U.S. 362 (2000)...........................        28

*Wilson v. McGinnis*, 413 F3d 196 (2005)...........................        31

*Von Moltke v. Gillies*, 332 U.S. 708 (1948).......................        26, 32

*Yarborough v. Alvarado*, 541 U.S. 652 (2004).................        28

*QUESTION PRESENTED*

     WHETHER HABEAS CORPUS RELIEF IS COMPELLED BECAUSE COUNSEL'S INEFFECTIVENESS RESULTED IN THE ENTRY OF AN UNCONSTITUTIONAL PLEA AND NEW YORK STATE'S CONCLUSION TO THE CONTRARY WAS AN UNREASONABLE APPLICATION OF SUPREME COURT LAW?

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
---------------------------------------------------------x
John Santiago

               Plaintiff-Appellant,       :

       -against-                   :        Docket Number
                                           12-1245-pr
D. Laclair,                           :
               Defendant -Appellee.
---------------------------------------------------------x

*JURISDICTION STATEMENT*

This Court has jurisdiction in this case pursuant to 28 U.S.C. Section 2254.

This is an appeal from the dismissal of a habeas corpus petition.

A certificate of appealability was granted by this Court on July 5, 2012.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
---------------------------------------------------------x
John Santiago

                 Plaintiff-Appellant,      :


        -against-                      :        Docket Number
                                             12-1245-pr
D. Laclair,                      :
                 Defendant -Appellee.
---------------------------------------------------------x

*BRIEF FOR THE PETITIONER-APPELLANT*
*PRELIMINARY STATEMENT*


      John Santiago, hereinafter the Petitioner, appeals from an Order of the United

States District Court for the Southern District of New York, filed February 16, 2012

(Batts, J.), adopting a magistrate's Report and Recommendation (Yanthis, M.J.), and

denying the Petitioner habeas corpus relief from a 2007 New York State judgment by

which he was convicted, upon a plea of guilt, of an E felony associated with a

maximum term of imprisonment of 3½ to 7 years. The Petitioner, who had, in

advance of the plea, successfully caused the court to dismiss the top 3 counts of the

indictment, had previously, in 1992, been convicted of a State felony. In the 1992

case, the Petitioner was sentenced to an indeterminate term of imprisonment of 8 to

24 years. In the 2007 case, the Petitioner was sentenced, as a prior felony offender,

to an indeterminate term of imprisonment of 1½ to 3 years. At sentence, in the first

mention of this matter in the record, the court pronounced the agreed-upon sentence consecutive to any undischarged portion of the 1992 sentence. The undischarged time on the 1992 sentence was not quantified during these proceedings and amounted to an additional term in excess of 8 years.

Following the district court's denial of relief and a certificate of appealability, the Petitioner timely appealed to this Court. On July 5, 2012, this Court granted the Petitioner review of the following issue: "whether petitioner was denied effective assistance of counsel in pleading guilty based on his counsel's alleged failure to advise him that any term of imprisonment would run consecutively to his undischarged time. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985)."

## STATEMENT OF FACTS

*Introduction*

After a rewarding battle against a ten-count New York State indictment, a battle that yielded the dismissal of the 3 top felony counts, the Petitioner agreed, as jury selection was to begin, to enter a plea of guilt in exchange for a promised sentence of 1½ to 3 years. The maximum sentence that could have been pronounced upon the remaining felony counts after trial was a sentence of 3½ to 7. Despite the election to enter a plea, the record documents the Petitioner's unwavering belief in the strength of his defense. Pronouncing sentence the court, for the first time announced, in accordance with the mandatory terms of the applicable New York State statute, that this conviction would force the Petitioner, a parolee at the time of the charged incident, to serve a consecutive unspecified sentence for the undischarged time remaining on the 1992 conviction. The further sentence amounted to more than 8 years and so yielded an aggregate maximum term of more than 11 years. The aggregated sentence was thus almost quadruple the duration of the maximum sentence that induced the plea. Moreover, in New York, parole is keyed to the minimum sentence. Had the Petitioner proceeded to trial, he would also have only risked only an additional 2 years of incarceration prior to parole eligibility. *See*, N.Y.P.L. § 170.25, § 70.06 §70.30.

Within months of the 2007 sentence, the Petitioner sought to recapture his plea on ground of ineffective assistance. The State court reached the merits of that claim but rejected the challenge. That decision, in this lop-sided case, one in which the undisclosed and mandatory consecutive sentence thoroughly eclipsed the promised term, was an unreasonably wrong application of Supreme Court precedent.

*The Initial Proceedings*

On July 8, 2006, the Petitioner made several purchases in a Rockland County, New York mall with a gift card ultimately revealed to be forged and encoded with a stolen credit card number. By State indictment, the Petitioner was charged with 10 crimes related to the creation, possession and use of the forged card: forgery in the second degree (three counts), criminal possession of a forged instrument in the second degree (two counts), identity theft in the second degree (two counts), petit larceny (three counts), and attempted petit larceny.

The Petitioner was initially represented by the Office of the Public Defender. As part of an omnibus motion brought by the Assistant Public Defender assigned to represent the Petitioner, the defense sought the dismissal of the first 5 counts of the indictment on the ground of legal insufficiency. With regard to the 3 second-degree forgery counts, the defense demonstrated that the prosecution had failed to adduce proof that the Petitioner signed a name other than his own at the time of the

purchases. The charged crime mandated evidence that the accused, "with the intent to defraud, deceive and injure another, falsely made, completed and altered a written instrument . . ." *See,* N.Y.P.L. §170.10(1). With regard to counts 4 and 5 of the indictment, by which the Petitioner was charged with second-degree possession of a forged instrument, the defense noted that criminality was keyed to the possession of a "forged instrument, which was and purported to be . . . a credit card." *See*, N.Y. P.L. §§170.25, 170.10(1). The card used by the Petitioner was a gift card. A 23-27.

In a *Decision & Order* issued September 13, 2006, the court granted the defense motion to dismiss the top 3 counts of the indictment and denied the dismissal motion as to Counts 4 and 5. The court reasoned that because the gift card had been altered and encoded with a magnetic strip associated with a credit card account, it could be considered a credit card within the meaning of the statute. In the *Decision & Order*, the court also granted the defense motion for *Wade* and *Huntley* hearings. A 65-72.

The defense received the prosecution's response to the omnibus motion after the issuance of the court's decision. Reviewing the disclosure material included with the response, the defense learned of the prosecution's allegation that the Petitioner participated in the creation of the forged instrument. On that basis, the defense brought a motion for re-argument. The defense reasoned that the evidence before the

Grand Jury was legally insufficient because the Grand Jury was never advised of the prosecution's claim that the Petitioner had *himself* altered the gift card. Thus, argued the defense, the prosecution had failed to present legally sufficient evidence of each of the crimes charged in the indictment to the Grand Jury because those crimes all mandate "indicia of Defendant's knowledge that the content on the card's strip was altered." A75-76. In a *Decision & Order* issued December 20, 2006, the court denied the motion. The court found that there existed circumstantial evidence of *mens rea* on the record, including, "the fact that the defendant admitted that he had purchased the card from an unknown individual." A 86-87.

In a *Decision & Order* issued February 2, 2007, the court denied a defense motion to suppress the show-up identifications of the Petitioner by Rockland County mall store employees. During the show-ups, the Petitioner was viewed in handcuffs, outside a police car, and beside a uniformed officer. A 94. The court also denied the defense motion to suppress the two statements attributed to the Petitioner by the prosecution. The first of these was an alleged statement to an officer at the mall that, "he received the gift card from his boss." A89-90. The second was an allegedly spontaneous holding-cell utterance by the Petitioner. Informed that a detective would be arriving shortly to speak with him, the Petitioner was alleged to have said, "that he had purchased the card from an individual who told him it would work." A90-91.

On February 1, 2007, the court conducted a *Sandoval* hearing.[1]  On that date,

the Petitioner was represented by new counsel.[2]  At the conclusion of the hearing, the

court ruled that if the Petitioner testified, the prosecution would be precluded from

raising a 1988 third-degree assault conviction, a 1989 conviction for unauthorized use

of a vehicle and a 1989 theft of services conviction.  The Petitioner could be

questioned, however, about a 1990 conviction for criminal possession of stolen

property.  The Petitioner's 1992 convictions for first-degree manslaughter, criminal

possession of a weapon and second-degree assault, were the subject of what is known

as the "*Sandoval* compromise," granting the  prosecution only the ability to inquire

as to whether the Petitioner was convicted of felonies in that year. A 128.

---

[1]

A *Sandoval* hearing is a State proceeding at which the court evaluates the admissibility, for impeachment purposes, of prior bad acts attributed to the accused. *People v. Sandoval*, 34 N.Y. 2d 371 (1974).

[2]

The motion to vacate the conviction that the Petititioner ultimately brought detailed the circumstances that, as the Petitioner understood them, caused his first counsel to withdraw.  In a January 2007 meeting, the Petitioner advised counsel that an incarcerated individual, one Gregory Williams, had sold him the gift card at issue and would sign a sworn statement that the Petitioner was unaware of the fraudulent nature of the card.  Williams was, at the time, being held on similar charges and also represented by the Public Defender.  The potential conflict of interest created by the Petitioner's suggestion that counsel obtain a sworn inculpatory statement from Williams caused counsel to withdraw from representation. A 163.

*The Plea*

On February 5, 2007, the Petitioner appeared with counsel for trial. As jury selection was about to begin, the Petitioner offered, through counsel, to plead guilty to a count to be added to the indictment charging Attempted Criminal Possession of a Forged Instrument in the Second Degree, a E felony. *See*, N.Y.P.L. §§ 110/170.25. Counsel represented that the Petitioner had authorized him to enter the plea, "with the understanding that he will receive one and a half to three years' incarceration. But that is what the District Attorney is recommending, and the Court stated that it will follow that recommendation." A 139. The state prosecutor confirmed the offer, adding, "Because he is a predicate." A 140.

Questioned by the court, the Petitioner confirmed that he had been convicted in New York State of first-degree manslaughter in 1992 and sentenced to a term of imprisonment of 8 to 24 years. Counsel indicated his awareness that the Petitioner, a parolee at the time of the commission of the charged acts, had served less than the full sentence pronounced when he advised the court, "my client was incarcerated from the period of 1992 to 2000." The court replied, in relevant part:

> "he was sentenced and he did roughly eight years and some months. Then he was paroled early, then got out. That was covered, I thought, in the Sandoval. In any event, that is part of the record. I am only doing this now to acquaint him with what it is. I will do that more fully at the time of sentence. Okay.

But the bottom line on this, Mr. Santiago, from your position, is they are going to recommend one and a half to three. The Court is going to go along with that. That's their recommendation. Do you understand that's what the sentence will be then? Do you understand that?"

A 143.

The Petitioner replied in the affirmative. The court advised the Petitioner of the rights that he was waiving by entering a plea of guilt, including the right to appeal. A144-146, A 149-50. The court questioned the Petitioner concerning his guilt of the crime charged. The Petitioner admitted that on July 8, 2006, in the Palisades Center Mall in the County of Rockland, he transacted purchases in several stores using a gift card that he knew was encoded with a forged magnetic strip from a credit card and, further, with the knowledge that he did not have permission or authority to make use of the credit card holder's account. A 149. At the conclusion of the allocution, the court accepted the plea.

*The Sentence*

On March 21, 2007, the Petitioner appeared before the court with counsel for sentence. The court again caused the Petitioner to acknowledge a prior felony conviction a found him to be a predicate felon. A154-56.

The court pronounced sentence and, for the first time, set forth the consecutive sentencing that is the subject of this Court's grant of a certificate:

"All right. Accordingly, I would sentence the defendant to an indeterminate term as a predicate felon. Minimum term would be one and a half, maximum term will be three years and that sentence will be consecutive to any undischarged determinate of indeterminate sentence to be imposed. Penalty assessment of 270 and that would constitute the sentence of the Court."

A 156.

At the conclusion of the proceedings, the court again returned to the issue of

the enhanced sentence:

"THE COURT: Remain on the case for 30 days to assist in filing the notice of appeal if he decides to file one. I note there is an appellate waiver executed. The reason I mention the fact that the sentence would be consecutive was he was on parole at the time this event took place. Very good. Thank you."

A 158.

*The State Collateral Attack Upon the Conviction*

The Petitioner lodged a collateral attack against the conviction on the grounds

of ineffective assistance. In a motion dated November 30, 2007 and brought pursuant

to New York State Criminal Procedure Law Section 440.10, the Petitioner sought to

vacate the Rockland County judgment, citing *Strickland v. Washington*, 466 U.S. 668

(1984), in support of his claims.

The Petitioner detailed several instances of ineffectiveness relating to his

innocence, to wit, his ignorance of the forged nature of the card at issue, the

prosecution's inability, on the record, to establish a legally sufficient case, and the failure by both his first and his substitute counsel to gather information from Gregory Williams. Had those attorneys looked into the Williams case, alleged the Petitioner, they would have discovered the statement that a co-defendant provided to the police which supported the Petitioner's claim that he was an unknowing purchaser of the forged card. In that statement, the co-defendant implicated Williams in the sale of the cards. A 166. The Petitioner further complained of substitute counsel's failure to locate and interview a second material witness, a cashier who showed the Petitioner how to use the gift card and thus would have demonstrated, at a trial, the Petitioner's ignorance about the true nature of the card. A 164-65.

In the motion the Petitioner also raised the instant claim:

> "Counsel failed to advise petitioner that, as a result of the plea, his Sentence will be modified by the Operation of Law (Penal Law 70.30) and that petitioner's sentence of 1-1/2 to 3 years, will become a 1-1/2 to 11 year Sentence."[3]

A 167.

> All parties, continued the Petitioner, were "fully aware of the petitioner's undischarged term for a previous conviction and that the defendant was on parole."

A 167.

_____

[3] The undischarged time remaining on the prior sentence was 8 years, 2 months and twenty days.

In the motion, the Petitioner explained his ignorance of the relevant statute. The instant prosecution represented his first parole violation in six years. The Petitioner thus, "never had the experience being sentenced to a consecutive term while having an undischarged sentence." A 168. The Petitioner also established that had he been properly counseled by counsel, he would not have entered the plea:

> "Had counsel informed petitioner about the applicable law that would have had a direct consequence to his plea, petitioner would not have accepted the plea and would have proceeded to trial."

A 168.

> "Given that the evidence against the petitioner was not overwhelming, there is more than a reasonable probability that, but for counsel's unprofessional errors (lack of investigation, preparation of the facts and the Law and neglecting to advise the petitioner of the **direct consequences** of his plea) petitioner herein, would not have pled guilty but would have insisted on going to trial and upon the proceeding therein, the outcome would have been different if Counsel appropriately conducted an investigation, different based upon the evidence, facts and belief mentioned in the moving papers herein."

A 169 (emphasis in the original).

Responding procedurally to the motion, the State argued that "neither counsel nor the court, were under any obligation to inform defendant that his parole would be revoked following his plea and sentence in the current case," because the revocation of parole was a collateral, rather than a direct, consequence of the plea. A179-80, *citing, People v. Ford*, 86 N.Y. 2d 397 (1995). The State further argued:

"While the sentence for a predicate felony offender is imposed consecutively to any undischarged sentence by operation of law (P.L. §70.25[2-a]), the revocation of parole is not a condition imposed by the trial court but is the product of a separate proceeding before the New York State Division of Parole (Executive Law § 259-I[3][d]; 9 N.Y.C.R.R. 8004.3). *Id*. Thus, the final aggregate sentence rests on the outcome of the parole revocation proceedings and is entirely beyond the trial court's control."

A 180, *additional citations omitted*.

The State did not, in its response papers, address the Petitioner's point that, as a result of the *fait accompli* nature of the imposition of a consecutive the remaining period of 8 years that represented the undischarged term of his prior sentence, he gained little real benefit from the entry of the plea. The State claimed that the court, at the time of sentence, put the Petitioner "on notice that due to his predicate status, his sentence might run consecutively to any undischarged sentence to be imposed." A 181.

That "notice," of course, was belated, as the plea had already been entered, inadequate, in light of the Petitioner's failure to protest, and issued by the wrong party, as it was counsel who was obligated to counsel the Petitioner regarding the ramifications of his plea. Furthermore, if one follows the argument lodged by the State to its logical conclusion, one must conclude that the court may well have been *incapable* of providing the Petitioner adequate notice. The court, argued the State,

"cannot be deemed to have known such information as the parole revocation proceedings were entirely separate and beyond the court's control." A 181.

The County Court denied the Petitioner's motion on the merits. The court did not address the claim at issue with specifity but ruled that the Petitioner "failed to satisfy either prong of the *Strickland* test." A185-86. The Petitioner timely sought leave to appeal to the New York State Supreme Court, Appellate Division, Second Department. On August 28, 2008, leave was denied. A 187.

*The Instant Petition*

In a petition timely filed on October 14, 2008, the Petitioner sought habeas corpus relief on the basis of several claims, including the instant claim. Once again, the Petitioner demonstrated that had he understood his sentencing exposure he would have proceeded to trial. Under these circumstances, the small benefit gained from the plea did not outweigh the limited risk of trial. A 21-22.

In response to the petition, the State argued that the State court's resolution of the Petitioner's claim of ineffectiveness did not constitute an unreasonable application under the AEDPA standard. Once again, the State claimed that counsel had no obligation to advise the Petitioner of the imposition of the mandatory consecutive sentence because those 8-plus years of additional incarceration constituted a collateral, and not a direct, consequence of the conviction. In a Reply, the Petitioner argued that

the sentence pronounced on the undischarged term was a direct consequence of the plea because no further adjudications were conducted in advance of the imposition of the extended term.

The Petitioner's case was referred to a magistrate judge (Yanthis, M.J.). In a *Report and Recommendation* issued on November 8, 2010, the magistrate judge concluded that the State's resolution of the Petitioner's claim could not be deemed an unreasonable application under AEDPA because, " 'The Supreme Court has not defined which consequences of a plea are direct and which are collateral.' " A 195, *quoting, Pignataro v. Poole*, 318 Fed. Appx. 46, 2010 WL 2501009 at 2 (2nd Cir. 2010). In a *Memorandum and Order* issued February 16, 2012, the district court (Batts, J.) adopted the *Report and Recommendation* in entirety and denied the Petitioner habeas corpus relief and a certificate of appealability. A 207-11.

*The Grant of a Certificate of Appealability*

Following the district court's denial of relief, the Petitioner timely appealed to this Court. On July 5, 2012, this Court granted review of the following issue: "whether petitioner was denied effective assistance of counsel in pleading guilty based on his counsel's alleged failure to advise him that any term of imprisonment would run consecutively to his undischarged time. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985)."

**ARGUMENT**

**COUNSEL'S INEFFECTIVENESS RESULTED IN THE ENTRY OF AN UNCONSTITUTIONAL CONVICTION AND NEW YORK STATE'S CONCLUSION TO THE CONTRARY WAS AN UNREASONABLE APPLICATION OF SUPREME COURT LAW.**

*A. Introduction*

This is a lop-sided case. The plea induced, on the day of jury selection, by a promised sentence of 1½ to 3, consigned the Petitioner, by operation of law, without prior warning and without exception, to an additional consecutive sentence in excess of 8 years. The misleading lenity of the plea bargain caused the Petitioner to abandon his vigorous challenge to the prosecution, a challenge that had already yielded a huge victory: the dismissal of the 3 top counts of the indictment. The case against the Petitioner was precariously balanced upon the theory that he, a man who signed his own name on the subject sales receipts, had knowledge of the forged nature of the gift card at issue. Against the backdrop of the Petitioner's commitment to his own innocence, the unknowing nature of the plea, and, thus, the failure of counsel to provide meaningful representation, the blatant unconstitutionality of the Petitioner's conviction is glaringly evident from the profound imbalance between the lenity of the promised sentence and the severity of the mandatory penalty automatically imposed as the result of the very fact of a further conviction.

*B. The Relevant New York State Statute*

At the plea, the Petitioner was adjudicated a second felony offender on the basis of a prior conviction. *See*, New York Penal Law § 70.06. The Petitioner's second felony status rendered mandatory the imposition of a consecutive sentence for any undischarged portion of an earlier term of imprisonment. *See*, New York Penal Law § 70.25 [2-a].[4] In cases involving defendants subject to undischarged time who are not prior felony offenders, the sentence or sentences imposed by the court may, at the court's election, run either concurrently or consecutively with respect to an undischarged term. *See,* New York Penal Law § 70.25[1]. By the terms of the statute, however, in cases involving a prior felony offender, "the court has no choice about which kind of sentence to impose.*" People ex rel. Gill v. Greene*, 12 N.Y.3d 1, 7 (2009). The consecutive sentence is automatically imposed by the State Department of Corrections. As the Petitioner noted in his reply papers in the district court, *District*

_____

[4] New York Penal Law Section 70.25[2-a] provides:

"When an indeterminate or determinate sentence of imprisonment is imposed pursuant to section 70.04, 70.06, 70.07, 70.08, 70.10, subdivision three or four of section 70.70, subdivision three or four of section 70.71 or subdivision five of section 70.80 of this article, or is imposed for a class A-I felony pursuant to section 70.00 of this article, and such person is subject to an undischarged indeterminate or determinate sentence of imprisonment imposed prior to the date on which the present crime was committed, the court must impose a sentence to run consecutively with respect to such undischarged sentence."

15

*Court Document* 11 at 19-22, a defendant in his situation is afforded no further process prior to that imposition. *See,* N.Y. Exec. Law § 259 I[3][d].[5] Following the imposition of a subsequent conviction, parole is "revoked by operation of law" and a defendant is "not entitled to any hearing, preliminary or final." *Melendez v. Bennett*, 291 A.D.2d 590, 591 (3d Dept. 2002), *citing, People ex rel. Harris v Sullivan*, 74 N.Y.2d 305, 308 (1989). *See also, Matter of Taylor v Fischer*, 67 A.D.3d 1191, 1193 (3d Dept. 2009) ("when a parolee is convicted of a new felony which is committed while under supervision and, as a result, he or she is sentenced to an indeterminate term of imprisonment, revocation of parole occurs by operation of law and no hearing is necessary.").

---

[5] New York Executive Law § 259 I[3][d] provides:
"when a presumptive releasee, parolee, conditional releasee or person on post-release supervision has been convicted of a new felony committed while under such supervision and a new indeterminate or determinate sentence has been imposed, the board's rules shall provide for a final declaration of delinquency. The inmate shall then be notified in writing that his release has been revoked on the basis of the new conviction and a copy of the commitment shall accompany said notification. The inmate's next appearance before the board shall be governed by the legal requirements of said new indeterminate or determinate sentence, or shall occur as soon after a final reversal of the conviction as is practicable."

## C. The Petitioner's Plea Was Not Knowing, Intelligent and Voluntary

During the plea proceedings, the Petitioner, a predicate felon, was never advised that the instant plea would trigger the imposition of a far greater penalty, a consecutive 8-year term representing the undischarged time on the Petitioner's prior felony sentence. At the plea, the Petitioner admitted the fact of the prior conviction and was adjudicated a prior felony offender. *See*, *New York Penal Law*, §§ 70.00, 70.06. Under New York State law, second felony offender status consigned the Petitioner, in a manner unrelated to this claim, to longer terms of imprisonment and higher minimum sentences. That status, also, however, compelled the imposition of a consecutive sentence in the duration of the undischarged time on the Petitioner's prior felony sentence. *See,* New York Penal Law §70.25[2-a].

It is significant that at the time of the plea, counsel stated that the Petitioner, "did roughly eight years and some months. Then he was paroled early" A 143. This statement documents counsel's awareness both that the Petitioner served less than the twenty-four year maximum of the prior sentence and that he was a parolee at the time of the 2006 incident that resulted in the 2007 conviction. Yet counsel neither at the time of the plea nor in advance of the sentence advised the Petitioner of the ramifications of the undischarged time on the earlier sentence and the interplay between that earlier sentence and the prior felony offender adjudication. The record

reflects the probable explanation for that omission: counsel's utter ignorance of the relevant statute.

At the plea, the court sought to confirm the Petitioner's prior conviction. Questioned, the Petitioner acknowledged the fact and constitutionality of that conviction. A 142. Counsel interjected, "We also concede the fact that my client was incarcerated from the period of 1992 to 2000. Therefore, that period of time would be excluded from the mandatory ten-year period." A 142. The time-frame, however, was irrelevant to prior felony offender status. The time-frame was relevant to the *Sandoval* hearing, an exploration of the admissibility, for impeachment purposes, of the prior bad acts attributed to the Petitioner. *See, People v. Sandoval*, 34 N.Y. 2d 371 (1974). Under State precedent, a conviction obtained more than ten years prior to trial may be deemed too remote to be of probative value. *People v Brothers*, 95 A.D.3d 1227, 1229 (2d Dept. 2012), *citing, Prince, Richardson on Evidence* § 6-410 [Farrell 11th ed].

The Petitioner's *Sandoval* hearing had been conducted on the court date prior to the date upon which the plea was entered. The entry of a plea meant that there would be no trial, no opportunity for the Petitioner to testify in his defense, and, thus, no impeachment. The ten-year remoteness of the Petitioner's prior crime was thus of no moment in light of the plea. The court indicated as much when it responded, in part, "That was covered, I thought, in the Sandoval . . . I am only doing this now to acquaint

him with what it is.  I will do it more fully at the time of sentence." A 143.

As of result of counsel's documented ignorance, it was not until the moment of the pronouncement of sentence that the Petitioner first learned that the instant conviction consigned him to a mandatory consecutive sentence that multiplied by 4 the 3-year maximum period of incarceration that he anticipated in electing to plead.  Even at that late juncture, the mechanics by which the further sentence would be calculated were  not explained to him in open court. Under these circumstances, the plea failed to with the demands of due process.  At the time that the Petitioner elected to enter the plea, as a result of counsel's ineffectiveness, the Petitioner did not have," sufficient awareness of the relevant circumstances and likely consequence." *Brady v. United States*, 397 U.S. 742, 748 (1970).

To satisfy due process, a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).  A plea "is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial -- a waiver of his right to trial before a jury or a judge.  Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequence." *Brady v. United States*, 397 U.S. 742, 748 (1970).

This argument is not a foreign one within State jurisprudence. New York has recognized that, upon demand by the a defendant, a plea induced by the leniency of a promised sentence must be returned when that promised sentence is less lenient than that allowable under the applicable law. Where the lenient sentence anticipated by the plea bargain may not be fulfilled, "the proper remedy is to vacate the sentence and afford . . . defendant, having been denied the benefit of the bargain, the opportunity to withdraw the plea." *People v. Ciccarelli*, 32 A.D.3d 1175 (3d Dept. 2006), *quoting, People v Martin*, 278 A.D.2d 743, 744(3d Dept. 2000). *See also, People v. Sheils*, 288 A.D.2d 504, 505 (2d Dept. 2001). "Inasmuch as the entire sentence is 'part and parcel of the plea bargain,' " New York has held that, "it must be vacated in its entirety" unless the court is able to find a legal means by which to restore the benefit of the bargain to the defendant. 288 A.D. 2d at 505, *quoting, People v Sellers,* 222 A.D.2d 941 (3d Dept. 1995). In this regard, State precedent is in accord with Supreme Court precedent.

For a plea to be said to be knowing, voluntary and intelligent, the record must demonstrate that the defendant, among other factors, "understands the advantages and disadvantages of accepting it, and the sentencing consequences . . . that will ensue once a conviction is entered based upon the plea." *Missourri v. Frye*, __U.S.__, 132 S. Ct. 1399, 1406 (2012). The Petitioner, as documented by this record and memorialized in

his unsuccessful  state collateral attack upon the conviction, could not have entered a constitutionally adequate plea in light of counsel's failure to warn him of  the additional consecutive sentence triggered by the fact of a conviction.  Such information might well have caused the Petitioner, as he averred both before the State court and the district court,  to elect to proceed to trial.

The Petitioner's encouraging success during the pretrial litigation phase of this prosecution, as reflected in the record, emboldened him to continue his fight against prosecution. By the day set for jury selection stage, the date upon which the plea was entered, the court had already, on a defense motion, dismissed the 3 top felony counts of the indictment. Subsequent to that victory, the defense had brought a further motion challenging the factual predicate of the *entire* prosecution. The denial of that motion, as documented by the Petitioner's filings, did not dampen the Petitioner's belief in his factual innocence.  Equally important, the full sentencing picture, the Petitioner's relatively low maximum sentence exposure after trial, 7  years as opposed to the 3 promised in the plea, and the mandatory consecutive 8-year sentence associated with *any* further conviction, dramatically reduced the stakes in the gamble of proceeding to trial.  That risk was even further reduced by the fact that the Petitioner, under State law, was eligible for parole after the minimum sentence had been served. *See,* N.Y.P.L. §70.40(iv).

Had Petitioner proceeded to trial, the largest minimum sentence that the court could have pronounced, a sentence of 3½ years, was only 2 years greater than the minimum of 1½ promised to induce the plea. Thus, the Petitioner's ignorance of the mandatory, consecutive additional term of some 8 years of incarceration reveals that his plea was unconstitutionally entered because it did not, and under these circumstances could not, represent a "voluntary and intelligent choice among that alternative causes of action open" to him. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

### D. Counsel Failed to Provide Reasonable Representation

The Sixth Amendment guarantees a defendant the right to have counsel present at all critical steps of the criminal proceedings, including the entry of a guilty plea. *Missouri v. Frye*, __ U.S.__, 132 S. Ct. 1399, 1405 (2012), *quoting, Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). Ineffective assistance claims are governed by the two part test set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), which considers whether counsel's performance fell below an objective standard of reasonableness and, further, whether such deficient performance prejudiced the defendant. 466 U.S. at 687-94.

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea," is tied to

the first-prong of the *Strickland* test, and thus "depends on whether counsel's advice was 'within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985), *quoting, McMann v. Richardson*, 397 U.S. 759, 771 (1970). A defendant who pleads guilty upon the advice of counsel, "may attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). The second prong, the prejudice requirement, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. . . . [The] defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. " *Hill v. Lockhart,* 474 U.S. at 59. Each prong of the *Strickland* test is amply satisfied on this record.

The first-prong or "performance component" of the *Strickland* test may hinge, as it does here, "on a single serious error," *Kimmelman v. Morrison*, 477 U.S. 365, 385-84 (1986), to wit, the failure to know of the consecutive sentencing that was part and parcel of the entry of a plea. Despite the admittedly "strong presumption of attorney competence" established by the *Strickland* opinion, 477 U.S. at 383, the Petitioner demonstrated before the State courts that his counsel's representation was "unreasonable under prevailing professional norms and that the challenged action was

not sound strategy." 477 U.S. at 384, *quoting,* 466 U.S. at 688-89. While no set of rules for counsel's conduct can satisfactorily take into account the variety of circumstances faced by defense counsel or the range of legitimate decisions as to how best to represent a criminal defendant, the Supreme Court has recognized that professional standards serve as useful guides to what reasonableness means in this context. *Bobby v. Van Hook*, 558 U.S. 4 (2009).

In failing to realize, and to explain to the Petitioner, that the proffered plea necessarily entailed a cumulative term of incarceration that was almost 4 times the maximum that the Petitioner otherwise anticipated, and in permitting the Petitioner's plea to remain in place without objection once the court pronounced a consecutive sentence, counsel failed to both "inform himself or herself fully on the facts and the law" and to protect and preserve the client's rights with "prompt legal action." *See, ABA Standards for Criminal Justice, Defense Function*, 3d ed. 1993, Standards 4-5.1 ("*Advising the Accused*"), 4-3.6 ("*Prompt Action to Protect the Accused*"). This particular deficiency set the quality of counsel's representation well below the level of the professional standards delineated by the American Bar Association and rendered it impossible for counsel to deliver to the Petitioner professionally reasonable services.

In evaluating the second prong of the *Strickland* test in the context of a plea, "one can fairly ask a defendant seeking to withdraw his plea what he might ever have thought he could gain by going to trial." *United States v. Benitez*, 542 U.S. 74, 85 (2004). The Petitioner fulfilled the second prong of the *Strickland* test when he demonstrated, to the reasonable probability standard, that had he known the full sentencing package attendant to a conviction, he would have risked proceeding to trial. On this record, that claim was compelling. The Petitioner, a zealous and interested advocate with, as documented by this record, a deep-seeded belief in his innocence, if properly advised of the sentence associated with the very fact of a conviction, might well have decided, as he set forth in sworn statements, that the risk of 2 additional years before he was parole-eligible was worth the chance to rid himself of an onerous and mandatory additional term of incarceration of 8 years.

The standard for a constitutionally adequate plea proceeding establishes, "on the record that the defendant understands the process that led to any offer, the advantages and disadvantages of accepting it, and the sentencing consequences" of the plea. *Missourri v. Frye,* 132 S. Ct. at 1406. Under no circumstances may that be said here. The Petitioner satisfied both prongs of the *Strickland* test when he identified the fatal flaw in the plea procedure and, further, established that, if properly advised by counsel as to the sentencing consequence of a conviction, he would have elected to go to trial.

Counsel's ineffectiveness also destroyed the integrity of the appellate waiver, which may not be said to be knowing, voluntary or intelligent under these circumstances. A "waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured." *Frederick v. Warden*, 308 F.3d 192, 196 (2d Cir. 2002). Thus, this case is properly before this Court even though there was a waiver of the right to appeal. The advice that the Petitioner received from counsel concerning the plea was not within acceptable standards. Thus, the waiver does not bar this claim. *Parisi v. United States*, 529 F.3d 134, 138-39 (2d Cir. 2008), *quoting, United States v. Torres*, 129 F.3d 710, 715-16 (2d Cir. 1997). In any event, because the State court reached the merits of the claim despite the waiver, that waiver, even if constitutionally obtained, would not have barred this Court's consideration of the merits of the Petitioner's claims. *Galarza v. Keane*, 252 F.3d 630, 637 (2d Cir. 2001).

### E. The Grant of Habeas Corpus Relief Is Compelled

Counsel was ineffective. An "accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948). The "decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal

case. . . [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision." *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998), *quoting, Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996)." Thus, "it follows that 'knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty.'" 156 F. 3d at 376, *quoting, United States v. Day*, 969 F.2d 39 (3d Cir. 1992). In evaluating the Petitioner's habeas corpus claims, this Court reviews the district court's legal conclusions *de novo*. *Jones v. Stinson*, 229 F.3d 112, 117 (2d Cir. 2000); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). That reviews demonstrates the need to free the Petitioner from the continued unconstitutional the deprivation of his liberty.

The State record established both counsel's ineffectiveness and the resultant prejudice that accrued to the Petitioner. The Petitioner demonstrated in his 440 motion that had counsel explained to him that the *very fact* of a conviction entailed an additional consecutive 8-year sentence, he would have proceeded to trial. This statement, against the compelling backdrop of the facts of this particular case, established that the Petitioner was prejudiced by counsel's ineffectiveness and so fulfilled the second prong of the *Strickland* test. *Hill v. Lockhart*, 474 U.S. 52, 60 (1985). The issue then becomes whether the State's denial of the Petitioner's claim was not simply wrong but unreasonably wrong. That question must be answered in the

affirmative. The district court was empowered to grant habeas relief because in denying relief to the Petitioner, New York State issued a decision that, "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See*, 28 U.S.C. §2254(d)(1).

A state court decision is contrary to Federal law when the State, " 'applies a rule that contradicts the governing law set forth in or cases,' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a different result from our precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003), *quoting*, *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). *See also*, *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). "Contrary to" means not simply applying the wrong rule, as in omitting the *Strickland* standard in evaluating a claim of ineffectiveness, but, rather, also means the misapplication of, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004), *quoting*, *Williams v. Taylor*, 529 U.S. at 413.

Under the "unreasonable application" clause, a district court may grant habeas relief, "if the state court identifies the correct governing principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004), *quoting*, *Williams v. Taylor*, 529

U.S. at 413. On the basis of this record, as demonstrated herein with citations to a host of Supreme Court cases, New York State's adjudication and rejection of the Petitioner's ineffective assistance claim was both contrary to and involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.

The State courts rejected the Petitioner's claim on the merits and without explanation. In such situations, this Court's focus on review is properly and immediately directed to Supreme Court precedent. *Aeid v. United States*, 296 F. 3d 58, 62 (2d Cir. 2002), *citing, Sellan v. Kuhlman*, 261 F. 3d 303, 311-12 (2d Cir. 2001). That precedent reveals the blatant error in the district court's adoption of the *Report and Recommendation* issued by the magistrate judge. The magistrate judge, reasoning that a finding of ineffectiveness in the context of a plea may only be based upon a "direct" consequence of the plea, found that the Petitioner could not be awarded relief because the Supreme Court had yet to address which consequences of a plea were direct and which were collateral. This conclusion represented a misreading of this case and Supreme Court precedent.

The Supreme Court has explicitly rejected the direct/collateral consequences dichotomy in the context of a plea. This differentiation seemingly originated with a cite to a footnote to a Fifth Circuit case in *Brady v. United States*, 397 U.S. 742, 755

(1970), *citing, Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir. 1957) (en banc), *rev'd on confession of error on other grounds*, 356 U.S. 26 (1958).The Court has expressly stated that it has "never applied a distinction between direct and collateral consequences to define the scope of 'constitutionally professional assistance' required under *Strickland*." *Padilla v. Kentucky*, __ S. Ct. __, 130 S. Ct. 1473, 1481 (2010). *See also, Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1406 (2012) (In *Padilla*, the court rejected the State's argument that the "Sixth Amendment's assurance of effective assistance does not extend to collateral aspects of the prosecution"). The *Hill v. Lockhart* decision reveals the irrelevance of any such artificial distinction.

In *Hill v. Lockhart*, the Petitioner would have been eligible for habeas corpus relief had he alleged, "that, had counsel correctly informed him about his parole eligibility date, he would not have pleaded guilty and would have insisted on going to trial." *Aeid v. United States*, 296 F. 3d at 64, *quoting,* 474 U.S. at 60. Counsel's incorrect advice to Hill concerning parole meant that the Petitioner was to serve just slightly more than six additional years, the difference between one-half and one-third of the pronounced sentence of 35 years, before "*becoming eligible*" for parole. 474 U.S. at 54 (emphasis supplied). Mr Santiago, as a result of counsel's unreasonable representation, pled guilty without the knowledge that by the very fact of his conviction he was *guaranteed* an additional consecutive term of more than 8 years. The

willingness of the Court in *Hill* to entertain the Petitioner's claim for habeas corpus relief, but for the Petitioner's failure to demonstrate prejudice in his pleadings, reveals the irrelevance of the direct/collateral dichotomy relied upon by the district court to deny the Petitioner habeas corpus relief.

Moreover, even if the direct consequence rule were Supreme Court issued, which it is not, the State could still not properly argue that the mandatory consecutive sentence was collateral *because State law holds to the contrary*. The statute leaves no "choice about which kind of sentence to impose." *People ex rel. Gill v. Greene*, 12 N.Y.3d 1, 7 (2009).The attendant consecutive sentence pronounced without further process being afforded to the defendant has been properly characterized by a State appellate court "as a direct consequence of the plea."*People v. Morabillo,* 56 A.D. 3d 694 (2d Dept. 2008). The *Morabillo* holding is a correct statement of State law with regard to the mandatory consecutive sentence imposed for undischarged time under the circumstances of this case. The consecutive sentence is thus a direct consequence of a later conviction because it has a "definite, immediate and largely automatic effect on the range of the defendant's punishment." *United States v. U.S. Currency*, 895 F.2d 908, 916 (2d Cir. 1990).

In this regard, as the Appellant argued below, the mandatory and automatic nature of the consecutive sentence readily distinguishes from the case of *Wilson v.*

*McGinnis*, 413 F3d 196 (2005). In the *Wilson* case, the court, sentencing a defendant who committed a crime while out on bail, retained the discretion to impose the sentence pronounced concurrent to the defendant's other sentence. *See,* N.Y. Penal Law § 70.25(2-b). This Court held that the defendant, "had no right to be told at the plea hearing that his sentence *might* run consecutively to his undischarged federal sentence." *United States v. Antonetti*, 362 Fed. Appx. 200 (2d Cir. 2010), *citing*, *Wilson v. McGinnis*, 413 F. 3d at 199. See also, *Church v. Corcoran*, 2010 U.S. Dist. LEXIS 7424, fn. 46 (NDNY 2006) ("the failure of the state court to advise a defendant that his sentences *could* run consecutively did not unreasonably apply the Supreme Court's general principle that a plea must be knowing, intelligent, and voluntary to be valid.")(emphasis supplied).

It cannot be over-emphasized that in cases involving a prior felony offender and an earlier undischarged sentence, *cases such as this one*, cases in which the court has no discretion in that the sentence of the undischarged time *must* be an additional consecutive sentence, *See, N.Y. Penal Law* § 70.25(2-a), that further sentence is a direct consequence of the subsequent conviction because it has a, "definite, immediate and largely automatic effect on the range of the defendant's punishment." 413 F. 3d at 199, *citing, United States v. United States Currency*, 895 F.2d 908, 915 (2d Cir.1990). A defendant who pleads guilty in utter ignorance of that mandatory consecutive

sentence, especially a defendant such as Mr. Santiago, who is forced by the fact of his plea to serve a sentence far in excess of that anticipated by the plea agreement, has not entered a plea that survives constitutional scrutiny and New York State's conclusion to the contrary was not just wrong, it was unreasonably wrong.

Contrary to the magistrate's conclusion, ineffectiveness was established on this record in accordance with long-standing Supreme Court precedent, from *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948) through *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)*, Tollett v. Henderson,* 411 U.S. 258, 267 (1973) and *Hill v. Lockhart*, 474 U.S. 52, 60 (1985). Though admittedly none of those cases have addressed this *exac*t fact-pattern, habeas relief may be granted where, as here "the state court identifies the correct governing principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004), *quoting*, *Williams v. Taylor*, 529 U.S. at 413.

Accordingly, and for all of the reasons set forth herein, habeas relief is compelled here because there can be no "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, __ U.S.__, 131 S. Ct. 770, 788 (2011).

**CONCLUSION**

**FOR ALL OF THE FOREGOING REASONS, THIS COURT IS URGED TO GRANT THE PETITIONER HABEAS CORPUS RELIEF.**

Respectfully Submitted,

/s/

_____

Sally Wasserman
Counsel to John Santiago

*CERTIFICATE OF COMPLIANCE*

In compliance with Federal Rules of Appellate Procedure 32(a) (7) (i) and (a) (7) (C) (i), I, Sally Wasserman, certify that this brief was prepared using the Corel Word Perfect word-processing system, and that, according to the word count of that word-processing system, this brief contains 8548 words, not counting the Table Of Contents and the Table of Authorities.

/s/

_____

Sally Wasserman
Counsel to the John Santiago
